Ronald Williams appeals from a summary judgment in favor of Bruno's, Inc., doing *Page 20 
business as Food World, and Brown's Cleaning, a floor cleaning company. Williams brought an action originally against "Food World," alleging in his complaint that "[He] was negligently [or wantonly] caused to slip and/or trip upon certain materials left in an unreasonably dangerous fashion in an aisle of said store." Williams amended his complaint to add Brown's Cleaning as a defendant, and to allege that Brown's Cleaning was responsible for causing the plaintiff to fall, or was "responsible for dislodging, moving or leaving on the grounds certain display racks which were a proximate cause of the Plaintiff's injuries and damages." Williams also amended his complaint to include Louis Lamar Light, an employee of Brown's Cleaning who was cleaning the floor area where Williams fell, as an individual defendant. The circuit court dismissed Light without prejudice.[1] Plaintiff does not appeal from the dismissal of Light. The issue is whether Williams submitted substantial evidence of the alleged negligence or wantonness of Bruno's or Brown's Cleaning.
Williams testified that he was shopping in a Food World grocery store, operated by Bruno's, at approximately 7:00 a.m. on February 5, 1992. Williams stated that he and Light were at the end of aisle three nearest the back of the store for a few seconds, and that Light then turned with whatever cleaning tool he was using, (Williams said he thought it was a push broom) and moved back up the aisle. Williams stated that he took six or eight steps along one side of the aisle, looking for grocery items, and that he then fell. He testified that he did not know what caused his fall, i.e., that he did not know what he might have slipped on, if anything, but that after his fall, there were four to eight small strips of an unidentified material in the floor around him, which he thought were strips that attach to the fronts of grocery shelves. He said they appeared to be the strips that are used to display price tags. He described the strips as being approximately an inch to an inch and a half wide, and approximately three to four feet long. Williams also testified that he saw one of the "strips" "protruding out" from the bottom grocery shelf about six inches into the aisle. He testified that something, he said he presumed it was the strips, made a loud noise as he fell. Williams stated that he did not kick the shelf as he fell. Williams testified that after the fall Light came hurrying to him and inquired whether he was okay. Light then went to tell the manager that Williams had fallen.
Light, the Brown's Cleaning employee, testified in deposition that he had been cleaning the aisle in which Williams fell for approximately 10 minutes before Williams fell and that he was still in the aisle working when Williams fell. Light stated that he had been up and down the aisle approximately five times before Williams fell. Light stated that when Williams entered the aisle, Light was using a motorized buffer to buff the floor. He stated that the machine was noisy. He stated that he saw Williams enter the aisle, and then he headed back up the aisle away from Williams, buffing. Light stated that when he reached the end of the aisle, he turned and saw Williams lying on the floor. He said he went back to him, and that he noticed a "kick plate" protruding approximately one foot into the aisle beside Williams. He stated that he did not see any "strips" lying on the floor around Williams. He stated that when he had been up and down the aisle previously, cleaning it, he had not noticed the kick plate being out of place.
Joseph Carl Porter, who was apparently the manager of the Food World store where Williams fell, also gave deposition testimony. He stated that when he reached Williams, a kick plate was bent out into the aisle beside Williams. He testified that he saw nothing else on the floor, or protruding into the aisle, except the kick plate.
Both Bruno's and Brown's Cleaning submitted motions for summary judgment, accompanied by deposition excerpts. Brown's Cleaning also submitted a brief in support of its motion. Bruno's submitted a letter brief, arguing that it was entitled to a summary *Page 21 
judgment because the "condition [causing the plaintiff's fall] as described by the plaintiff was open and obvious, therefore barring the plaintiff's claim." Brown's Cleaning argued in its brief that Williams had presented no evidence of any negligent or wanton acts by Brown's Cleaning, and that there was no evidence that Brown's Cleaning had had notice of any defect or dangerous instrumentality before the accident, and that Williams had admitted that the "strips" were open and obvious.
A summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P. Once the moving party makes such a prima facie showing, the burden shifts to the nonmovant to show by substantial evidence that there exists an issue of fact. Ala. Code 1975, § 12-21-12;Specialty Container Mfg., Inc. v. Rusken Packaging, Inc.,572 So.2d 403 (Ala. 1990).
Section 12-21-12, Ala. Code 1975, requires proof by "substantial evidence" in order to "submit an issue of fact to the trier of facts."
Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989). When reviewing a summary judgment, this Court views the evidence in the light most favorable to the nonmovant. Stephens v. City of Montgomery, 575 So.2d 1095,1097 (Ala. 1991).
 I. Negligence of Brown's Cleaning and/or Bruno's
The excerpts of the deposition testimony of Williams, Porter, and Light presented substantial evidence of negligence on the part of both Brown's Cleaning and Food World. Williams testified that he saw several strips lying about him after he fell. Although Williams's testimony is to some extent disputed, he did present substantial evidence by his own testimony that there had been some objects on the floor and that those objects had caused him to fall.
Williams was a business invitee upon the grocery store's premises at the time of his accident, "and as such, was owed a duty by the grocery to exercise reasonable care in maintaining the premises in a reasonably safe condition." Bogue v. R MGrocery, 553 So.2d 545, 547 (Ala. 1989). If it believes Williams's testimony, a jury could find that as many as eight strips were lying on the floor. If these strips were for the fronts of shelves, a jury could infer that they had been placed there by an employee of Food World for installation. A jury could also infer that Light, contrary to his testimony, saw the strips on the floor and simply worked around them.
Alternatively, Williams's evidence would support an inference that the strip he saw "protruding out" from the shelf was actually the kick plate. If that were the case, the kick plate was out of place and could have caused someone to trip. If the kick plate was out of place, a jury could reasonably infer that Light saw it before Williams fell or that Light caused it to protrude.
The displacement of the kick plate would also support an inference that Bruno's was negligent. "The duty of a shopkeeper to maintain premises in a reasonably safe condition for its invitees is well settled." Borden v. Consumer Warehouse Foods,Inc., 601 So.2d 976, 979 (Ala. 1992). One could reasonably infer that Light saw or should have seen the kick plate protruding from the shelf before Williams's fall, and Bruno's produced no evidence that Light and Brown's Cleaning were independent contractors rather than agents or employees of Bruno's. If a Bruno's agent or employee was in the aisle during the accident and either saw the kick plate protruding or caused it to protrude, then Bruno's was subject to liability for the agent or employee's leaving the kick plate in a dislodged position.
 II. Notice to Brown's Cleaning and Bruno's
We first note that in a negligence action against a shopkeeper questions of notice are properly left to the jury.Winn-Dixie Montgomery, Inc. v. Weeks, 504 So.2d 1210, 1211
(Ala. 1987). If Williams's testimony *Page 22 
is believed, i.e., if the facts are that the strips were on the floor and the strips caused his fall, then Brown's Cleaning obviously had constructive notice, through their employee Light, who would or could have seen them during his four previous trips up and down the aisle. Bruno's also could be found to have had notice, because one might reasonably infer that the strips were placed there by an employee of that Food World store. " 'When the defendant or his employees have affirmatively created the dangerous condition, plaintiff need not introduce evidence that defendant had actual or constructive knowledge of the hazard. Under such circumstances, the courts presume notice.' " Dunklin v. Winn-Dixie ofMontgomery, Inc., 595 So.2d 463, 465 (Ala. 1992) (citations omitted).
 III. Open and Obvious Condition
Bruno's and Brown's Cleaning both argue that if Williams's testimony concerning the strips is taken as true, then Bruno's and Brown's Cleaning were still entitled to a summary judgment, because, they say, the strips were open and obvious and Williams was therefore contributorily negligent in slipping on them. The defendants argue that in his deposition Williams admitted that the strips were open and obvious:
 "Q. [Defense attorney] "And when you turned around and started to walk up that aisle, why didn't you see those strips on the floor? . . .
 "A. I wasn't looking on the floor. I was in there to shop.
 "Q. Okay. You weren't looking where you were going, were you?
"[Plaintiff's attorney] Object.
"Q. Is that right?
"A. I would say, yeah.
"Q. You'd say that's right?
"A. No. I was looking where I was going.
 "Q. Well, if you were looking where you were going, why didn't you see the strips on the floor?
"[Plaintiff's attorney] Object.
"Q. Huh?
 "A. I don't go into grocery stores hunting shelves on the floor. I mean, if it's a big counter or something set there — I've never fell nowhere before."
We first note that "questions of contributory negligence, assumption of the risk, and whether the plaintiff should have been aware of the defect, are normally questions for the jury."Bogue, 553 So.2d at 547. Although "there is no duty to warn of open and obvious defects which the injured party should be aware of in the exercise of reasonable care," Owens v. NationalSecurity of Alabama, Inc., 454 So.2d 1387, 1389 (Ala. 1984), we hold that Williams's testimony quoted above does not establish that the strips were an open and obvious condition. One could reasonably infer from that testimony that Williams was focusing his attention on the shelves, not that he was not looking where he was going. Nowhere in Williams's testimony does he say that the strips were obvious to him before he fell; in fact, Williams stated that he did not see the strips until after he fell.
Although we hold that Williams presented substantial evidence to support the submission of his negligence claims to a jury, Williams has not argued on appeal that his wantonness claims should have been submitted to a jury. That argument is therefore waived.
That portion of the summary judgment holding for Bruno's and Brown's Cleaning on the negligence claim is reversed, but that portion in favor of Bruno's and Brown's Cleaning on the wantonness claim is affirmed.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
HORNSBY, C.J., and MADDOX, KENNEDY and COOK, JJ., concur.
[1] Apparently, the amendment to the complaint that added Light as a defendant was not served upon Light. *Page 23