813 So.2d 861 (2001)
WAL-MART STORES, INC.
v.
Sylvia ROLIN.
1001048.
Supreme Court of Alabama.
September 21, 2001.
*863 Michael M. Shipper and Kirkland E. Reid of Miller, Hamilton, Snider & Odom, L.L.C., Mobile, for appellant.
James M. Corder and Mitchell K. Shelly of Alexander, Corder, Plunk, Baker & Shelly, P.C., Athens, for appellee.
MADDOX, Retired Justice.
The defendant Wal-Mart Stores, Inc. ("Wal-Mart"), appeals from a judgment entered against it on a jury verdict in favor of the plaintiff Sylvia Rolin. The issues presented are (1) whether the trial court erred in denying Wal-Mart's original motion for a judgment as a matter of law and its renewal of that motion, on the basis that the plaintiff did not prove Wal-Mart had had notice of the dangerous condition she alleged had caused her to be injured, and (2) whether the trial court erred in refusing to give the jury a curative instruction requested by the defendant Wal-Mart. We have carefully reviewed the record and have concluded that the trial judge did not err; therefore, we affirm.
On March 10, 1997, Rolin entered the Wal-Mart store located on U.S. Highway 72 in Athens. It is undisputed that Wal-Mart had constructed a barbeque-grill display in the garden center at the store, using concrete stepping stones. It is also undisputed that Rolin tripped over a barbeque grill in the garden center and fell. She sustained a broken hip in the fall.
Rolin sued Wal-Mart and its store manager, Lori Huntley, in the Limestone County Circuit Court, on March 10, 1999. She alleged that the defendants had negligently or wantonly caused or allowed an unreasonably dangerous condition to exist. Before trial, Rolin moved to dismiss Huntley as a defendant and to dismiss her wantonness claim. The trial court dismissed Huntley and dismissed the wantonness claim. On October 2, 2000, the jury returned a verdict in favor of the plaintiff, awarding her $150,000. The court entered a judgment based on that verdict. Wal-Mart appeals.
Wal-Mart argues that Rolin failed to produce substantial evidence to support her claim of negligence.
"`It is a well-established rule of law in this state that in order to prove a claim of negligence a plaintiff must establish that the defendant breached a duty owed by the defendant to the plaintiff and that the breach proximately caused injury or damage to the plaintiff.' The duty owed by a premises owner to an invitee is also well established:
"`The owner of premises owes a duty to business invitees to use reasonable care and diligence to keep the premises in a safe condition, or, if the premises are in a dangerous condition, to give sufficient warning so that, by the use of ordinary care, the danger can be avoided.'"
Kmart Corp. v. Bassett, 769 So.2d 282, 284-85 (Ala.2000) (citations omitted). Wal-Mart argues that Rolin failed to make out a prima facie case of negligence, because, it argues, she failed to produce substantial evidence indicating that Wal-Mart breached its duty of care to her. Wal-Mart maintains, in its brief, that the evidence demonstrated that Wal-Mart did not create a hazard and did not know that a hazard existed. Wal-Mart correctly states the law of Alabama concerning premises liability:
"`An owner of a premises is not an insurer of the safety of its invitees, and the doctrine of res ipsa loquitur is not *864 applicable to slip and fall cases. Neither does a presumption of negligence arise from the mere fact of an injury to an invitee. An owner will be liable only if it failed to use reasonable care in maintaining its premises in a reasonably safe manner.'"
Ex parte Potmesil, 785 So.2d 340, 343 (Ala.2000) (quoting Flagstar Enters., Inc. v. Bludsworth, 696 So.2d 292, 294 (Ala.Civ. App.1996) (citations omitted)).
Pamela Whitman, who was an assistant manager at the Athens Wal-Mart store at the time of Rolin's fall, testified that she saw Rolin fall. Whitman testified that she was within 10 feet of Rolin when she fell. Whitman testified that Rolin fell off the stepping stones used in the barbeque-grill display. Whitman testified that she did not see merchandise sticking out from the display into the main aisle. Whitman testified that there was not a six-foot aisle of stepping stones in the grill display as Rolin alleged.
Rolin testified that she and her husband Howard Rolin had entered the Wal-Mart store at the garden-center area. Rolin testified that she turned left at an open place and stepped up onto the stepping stones used in the barbeque-grill display. Rolin testified that she tripped over a barbeque grill while walking on the stepping stones. Rolin testified that she did not see the grill before she tripped. Mr. Rolin testified that he and Mrs. Rolin walked on the stepping stones in the aisle. Mr. Rolin testified that when Mrs. Rolin fell he noticed a barbeque grill sticking out of a box. Mr. Rolin testified that the aisle of stepping stones was six feet wide. Mr. Rolin testified that this aisle was between the barbeque grills.
Wal-Mart maintains that it made a prima facie showing that it had no actual or constructive notice that a barbeque grill was sticking out of the box or that the grill display was hazardous. Rolin, however, argues that Wal-Mart had created a dangerous condition when it constructed the barbeque-grill display. "`When the defendant or his employees have affirmatively created the dangerous condition, [the] plaintiff need not introduce evidence that [the] defendant had actual or constructive knowledge of the hazard. Under such circumstances, the courts presume notice.'" Wal-Mart Stores, Inc. v. McClinton, 631 So.2d 232, 234 (Ala.1993) (quoting Joseph A. Page, The Law of Premisis Liability, § 9.11 at 169 (2d ed.1988)). In McClinton, this Court affirmed the trial court's judgment based on a jury verdict for the plaintiff. Evidence indicated that the defendant had displayed a gun cabinet that protruded into the aisle in such a way as to cause the plaintiff's fall.
This case is analogous to Mims v. Jack's Restaurant, 565 So.2d 609 (Ala.1990), where the trial court entered a summary judgment in favor of the defendant Jack's because the plaintiff, who fell over a loose part of the threshold of a door at the defendant's restaurant, presented no evidence that Jack's knew or should have known that the threshold was loose. This Court in Mims distinguished the facts in Mims from the facts in a case where a plaintiff slips and falls on a slippery substance of unknown origin:
"In one of those slip and fall cases [cases involving a slippery substance of unknown origin], a plaintiff not only must make a prima facie showing that her fall was caused by a defect or instrumentality [a slippery substance] located on the premises, but she must also present prima facie evidence that the defendant had or should have had notice of the defect or instrumentality at the time of the accident. On the other hand, in cases where the alleged defect is a part *865 of the premises (in this case, a loose threshold in the main entrance of a restaurant), once a plaintiff has made a prima facie showing that a defect in a part of the premises has caused an injury, then the question whether the defendant had actual or constructive notice of the defect will go to the jury, regardless of whether the plaintiff makes a prima facie showing that the defendant had or should have had notice of the defect at the time of the accident."
Mims, 565 So.2d at 610 (citations omitted).
Here, the barbeque-grill display is analogous to the gun cabinet in McClinton and the loose threshold in Mims, in that there is evidence to indicate that the hazardous condition was created by employees of the premises owner.
Next, we consider whether the trial court erred in failing to give a curative instruction in response to a question from the jury, as Wal-Mart requested. For a better understanding of the issue presented, we set out the question, the trial court's response, and the colloquy that occurred between the defendant's counsel, the plaintiff's counsel, and the court.
"THE COURT: Thank you, ladies and gentlemen. I have a written question here, and let me just simply read this. I have discussed it with the attorneys. It says, `If the plaintiff is guilty of one percent of guilt, do we rule for the defense?'
"Let me answer it this way: I've gone through a charge of law for you, and I certainly can appreciateI know these lawyers can appreciate that it's hard sometimes for you to digest all that, and I respect that. But, I can't go back and answer piecemeal questions without really going back through a pretty lengthy explanation of my charge again. Okay. None of my charge had anything to do with percentages. Let me simply say that. I don't mean to throw it back in your lap, but in essence, that's kind of where we are. It's just really not the type of question that I can just give an answer to. The only way I can answer this questionI've discussed this with the attorneysis to really go back through a complete explanation of a lot of things, and if we get to that point, and we feel like that's necessary, certainly, we can do that. So I'm not being insensitive to your request, but I just don't think it's a question that I can answer at this point in time.
"I'm going to ask you all to please try to recollect as best you can everything that we dealt with here and the law that I charged you on and use that as a basis to try to work toward a verdict. Okay. Thank you very much. If you all would, you may go back to the jury room.
". . . .
"Mr. Lee: Judge, could I say this? I think the only thing that worries me a little bit is that you made a comment that in no part of your charge did you discuss percentages, which is true. You certainly did not. But the thing that worries me is I don't want this jury to go back there thinking what I've said to them is false and incorrect because that
"The Court: I understand.
"Mr. Lee: Because one percentif they find she's one percent at fault, that is, in effect
"The Court: I hope I didn't. I apologize if I triedindicated something misstating the law
"Mr. Corder: I don't think you did.
"The Court: It was more of an analogy of how that would all work out.
"Mr. Shelly: I think you said that arguments and the law and the facts inferred

*866 "The Court: My responsibility is to charge them on the law, and I didn't get into percentages, but I told them to consider the argument and consider everything. I hear where you are.
"Mr. Lee: I would appreciate some type ofbefore they start deliberating againI don't know if you call it a curative instruction or something to the effect that what I have said is not false. I'm not sure how to word it, but I don't want them going back there thinking that what I've said in my closing argument is inconsistent with what the law is. I think you can do that in a way that would not be overemphasizing anything, and I ask the Court to do that.
"The Court: What you are asking me to do is comment upon something that they heard in closing argument that isn't the law. That's the hard thing I wrestle with. We almost get into debating saying what David [Lee] said is right or wrong. It draws me into an argument that I don't want to make. That's my whole thing. I hear where you are. I think the more said the worse it gets. I really do. And in all fairness, I hear you. What I told them, in my judgment, wasn't critical to anybody or wasn't saying anybody was mistaken. I just tried to say that they need to consider the arguments, but the law is all I can deal with and I've charged them, and there wasn't a percentage type analysis for them.
"Mr. Lee: I agree with that. I understand that.
"The Court: Do you know what I mean?
"Mr. Lee: But at the same time, I don't want them to think that this lawyer stood up and told them things that aren't true. The defense runs the risk of that if you say, nowhere in my charge do I mention percentages. I think the safest thing to do is say that you are not suggesting to them that any of the arguments made by the lawyers with respect to the law is incorrect.
"Mr. Shelly: I think by doing that you would be endorsing their argument.
"The Court: I would almost get into saying that what David [Lee] said is right. I'm going to leave it alone. In all due respect, I'm going to leave it alone. My judgment says we're okay. I may be wrong. I certainly didn't intend it. I don't think it came across as saying what David [Lee] said is not right. Dave, I'm going to leave it alone. I know you excepted. If you want to put it on the record, you may. I think it's on the record."
Wal-Mart argues that the use of the phrase "none of my charges had anything to do with percentages," in response to the jury's question, confused the jury as to what the law in Alabama is concerning contributory negligence. Wal-Mart maintains that the trial court's failure to give a curative instruction or to recharge the jury on the issue of contributory negligence is reversible error.
In contrast, Rolin argues that the trial court properly charged the jury as to the law concerning contributory negligence and did not err in refusing to give the requested curative instruction.
This Court has held that the question whether to grant a jury's request for additional instructions or for reinstruction lies within the discretion of the trial court. Merrell v. Joe Bullard Oldsmobile, Inc., 529 So.2d 943 (Ala.1988). While the better practice might ordinarily be for the trial court to accede to such jury requests, we cannot say that the failure to do so is reversible error. Id. at 948. Upon a review of the record, we are not persuaded *867 that the trial court's response to the jury's question was unduly weighted against Wal-Mart. In response to Wal-Mart's request for a curative instruction, the trial court, although not reinstructing the jury on the law of contributory negligence, did remind the jury to remember the entire charge as it had been given. We hold that any error that may have resulted from the failure to give a curative instruction was harmless.
The trial court's judgment is affirmed.
This opinion was prepared by retired Justice Hugh Maddox, sitting as a Justice of this Court pursuant to § 12-18-10(e), Ala.Code 1975.
AFFIRMED.
HOUSTON, SEE, LYONS, BROWN, HARWOOD, and STUART, JJ., concur.
JOHNSTONE, J., concurs in the rationale in part and concurs in the result.
MOORE, C.J., concurs in the result.
WOODALL, J., dissents.
JOHNSTONE, Justice (concurring in the rationale in part and concurring in the result).
I concur, except that I do not think that the trial judge's jury instructions were erroneous at all. We need not apply a harmless error analysis.