**Dorothy BLIZZARD, Plaintiff,**

**v.**

**FOOD GIANT SUPERMARKETS, INC., etc., et al., Defendants.**

**No. CIV.A. 01–A–126–N.**

United States District Court, M.D. Alabama, Northern Division.

April 22, 2002.

Allen G. Woodard, Christopher M. Sledge, Andalusia, for Plaintiffs.

William J. Gamble, Jr., M. Warren Butler, Mobile, for Defendants.

**MEMORANDUM OPINION AND ORDER**

ALBRITTON, Chief Judge.

### I. INTRODUCTION

This cause is before the court on a Motion for Summary Judgment filed by the Defendant, Food Giant Supermarkets, Inc., on February 20, 2002.

The Plaintiff, Dorothy Blizzard ("Blizzard") originally filed her Complaint in the Circuit of Covington County, Alabama on July 27, 2000. Blizzard subsequently filed an Amended Complaint and a Third Amended Complaint. Blizzard brings claims of negligence (Count I), failure to maintain a common area (Count II), and wantonness (Count III).

Food Giant removed the case to this court, stating that this court has diversity jurisdiction because the parties are diverse and the requisite amount in controversy is present. Blizzard filed a Motion to Remand based on the timing of the removal, which was denied.[1]

---

1. Although no issue has been raised as to the existence of subject matter jurisdiction, this court has an independent duty to examine the existence of subject matter jurisdiction. As the injuries in this case were extensive, requiring hip replacement surgery, and as Blizzard has brought a claim for wantonness in addition to her negligence claim, the court concludes that the requisite amount in contro-

For reasons to be discussed, the Motion for Summary Judgment is due to be DENIED in part and GRANTED in part.

## II.  *SUMMARY JUDGMENT STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–324, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## III.  *FACTS*

The submissions of the parties establish the following facts, viewed in a light most favorable to the non-movant:

Blizzard is a resident of Andalusia, Alabama and was seventy-three years old at the time of the events in question. In June of 2000, Blizzard went to the Pic–N–Sav grocery store to shop. While there, she tripped over an end cap pallet ("end cap"), which is a platform that rests on the floor at the end of the grocery aisles and is used for the display of products. The end cap is four feet by four feet and is eight inches high. The end cap is metal and is the color of the floor of the store. Blizzard Deposition, page 68:7. At the time of the incident, the end cap in question had been emptied of products. When the end cap is stocked with display items, it is not visible to customers. Smith Deposition at page 30: 3–7. Blizzard states that she did not see the end cap before she tripped over it. Blizzard also states that she had walked on the aisle on previous visits to the store and the end cap had never been there before. Blizzard Deposition at page 65:3–5. As a result of tripping over the

versy, as well as complete diversity of citizenship, existed at the time of removal.

end cap, Blizzard fell and suffered injuries which ultimately resulted in hip replacement surgery.

The manager of the store, Marvin Smith ("Smith"), had emptied the end cap and had not yet restocked it when the incident occurred. Smith Deposition, page 27: 19–23. Smith testified that he is not aware of anyone tripping over an end cap in the past. Smith Affidavit at ¶ 7.

## IV. *DISCUSSION*

Food Giant argues that it is entitled to summary judgment as a matter of law because it had no duty to warn Blizzard of the presence of the emptied end cap, and because Blizzard was contributorily negligent as the end cap was an open and obvious condition. Food Giant states that the end cap was surrounded by displays on three sides, and that Blizzard only tripped over it because she was not watching where she was going. Blizzard responds that she was not contributorily negligent, and that the questions of the obviousness of a danger are to be resolved by the finder of fact.

There are two lines of business invitee cases under Alabama law involving falls. *Nelson v. Delchamps, Inc.*, 699 So.2d 1259, 1261 (Ala.Civ.App.1997). Under one line of cases, there is a substance which the plaintiff slips on and which the plaintiff contends the business negligently failed to clean up. *Id.* Under the other line, the plaintiff alleges that the business negligently created a hazardous condition that caused injury to the plaintiff. *Id.* When the defendant affirmatively creates the condition, the plaintiff need not introduce evidence of actual or constructive knowledge, because notice is presumed. *Id.*

The instant case falls within the latter of the two lines of cases. It involves an end cap placed in the store for the purpose of displaying merchandise. The Alabama Supreme Court has stated that where an alleged defect, such as a "display rack" is part of the premises, once the plaintiff has made a prima facie showing that it caused the injury, then the question of whether the defendant had actual or constructive notice of the defect will go to the jury, whether or not the plaintiff makes a prima facie showing that the defendant had or should have had notice of the defect at the time of the accident. *Mims v. Jack's Restaurant*, 565 So.2d 609, 610–11 (Ala.1990). Food Giant has argued, however, that the end cap was an open and obvious danger; so it had no duty to protect Blizzard against it.

The parties have essentially cited this court to various Alabama decisions and argued that this case is like those cases. Blizzard, of course, has argued that this case is like those decisions in which a question of fact precluded judgment as a matter of law, see *Nelson*, 699 So.2d at 1261, while Food Giant has argued that this case is most analogous to cases in which judgment as a matter of law was granted. See *Bud's Outlet and Wal–Mart Stores, Inc. v. Smith*, 781 So.2d 219, 222–23 (Ala.Civ.App.2000), *cert. denied, Ex parte Smith*, 781 So.2d 223 (Ala.2000).

In *Bud's Outlet*, a plaintiff tripped and fell over a wheelchair footrest at the exit of the store. The plaintiff testified that she had seen the wheelchair on other trips to the store when the wheelchair was located by the entrance to the store. The testimony in *Bud's Outlet* was that the plaintiff did not notice the wheelchair by the exit on the day in question because she was distracted by either her daughter or her grandson.

The court of civil appeals held that the relocation of the wheelchair from its usual place at the entrance to the exit was not a hidden defect, and that had the plaintiff not been distracted by her daughter or grandson, she would have avoided the fall.

*Id.* at 222. The court also stated that the record did not indicate that there was actual or constructive notice that the footrest protruding into the exit route was such a hazard or hidden defect that it could give rise to a duty to warn. The court, therefore, reversed a verdict in the plaintiff's favor. *Id.*

One case which is similar to this one which was not cited by the parties is *Wal–Mart Stores, Inc. v. McClinton,* 631 So.2d 232 (Ala.1993). In *McClinton,* the plaintiff was walking down an aisle in a store where two wooden gun cabinets protruded into the aisle. The court first concluded that the hazardous condition was created by the employee of the premise's owner by allowing the gun cabinet, with its extended molding, to protrude into the aisle. *Id.* at 234. Therefore, the court held, the plaintiff did not have to produce additional evidence of notice to establish a prima facie case. *Id.* With respect to the issue of whether the cabinet was open and obvious, the court stated that while the plaintiff saw the cabinet, it was not evident that he knew or should have known or that he appreciated the danger caused by the fact that the cabinet molding protruded into the aisle. *Id.* at 235. The court held, therefore, that the question of whether the danger was open and obvious was properly presented to the jury. *Id.* at 235. The court stated that it could not agree that the defect was open and obvious as a matter of law. *Id.*

Although the plaintiff in *McClinton* actually saw the cabinet, while in this case Blizzard did not see the end cap before her fall, that fact does not put the facts in this case outside of the *McClinton* rationale. *McClinton* has been relied upon by the Alabama Supreme Court in *Wal–Mart Stores, Inc. v. Rolin,* No. 1001048, 2001 WL 1105519 (Ala. Sept.21, 2001). In *Rolin,* the plaintiff testified that she tripped over a barbeque grill which was part of a display created by the defendant. The plaintiff in *Rolin* did not see the barbeque grill which allegedly protruded into the walkway. *Id.* at *2. The defendant argued on appeal that it did not create a hazard and that it did not know a hazard existed. The court reasoned that the barbeque grill was analogous to the gun cabinet in *McClinton* in that there was evidence that the hazardous condition was created by employees of the premises. *Id.* at *3.

■ The Alabama Court of Civil Appeals' decision in *Bud's Outlet* and the Alabama Supreme Court's decisions in *McClinton* and *Rolin* appear to be somewhat in tension.[2] This court need not resolve this apparent tension, however, as *Bud's Outlet* is factually distinguishable from this case. The characterization of the alleged defect in *Bud's Outlet* as being the relocation of the wheelchair is significantly distinct from the alleged defect in this case. In *Bud's Outlet,* there was no analysis of whether the changed placement made the chair more difficult to see. In this case, Blizzard's contention is that the removal of the merchandise made the end cap defective in part because the end cap to was difficult to perceive. Further, unlike in *Bud's Outlet,* there is no contention that Blizzard was distracted from seeing the end cap because she was talking with anyone else. Accordingly, this court concludes that the facts of this case fall within *McClinton* and *Rolin,* rather than *Bud's Outlet.* Therefore, the evidence that the

**2.** One Justice of the Alabama Supreme Court wrote a dissenting opinion from the denial of certiorari in *Bud's Outlet,* opining that the jury verdict should be upheld under *McClinton. See Ex parte Smith,* 781 So.2d 223 (Ala.2000)(England, J., dissenting). The court also notes that while *McClinton* has been cited in numerous decisions, there are no reported cases which have cited to *Bud's Outlet.*

empty end cap, which was not perceived by Blizzard, was a condition created by Food Giant is sufficient to present the issue of notice of the hazard to the jury. As there is apparently no contention that Blizzard has failed to demonstrate that this hazard created by Food Giant caused Blizzard's injuries, the court now turns to the question of whether the end cap was open and obvious as a matter of law.

Food Giant attempts to demonstrate that the end cap in this case was open and obvious, thereby requiring summary judgment in Food Giant's favor. Food Giant contends that the very nature of the end cap makes it open and obvious as it was four feet by four feet and eight inches high. Food Giant points to *Ex parte Neese*, No. 1000945, 2001 WL 1299042 (Ala. Oct.26, 2001), in which a door mat on a walkway to a home was held to be an open and obvious danger. According to Food Giant, the end cap was at least as obvious as a door mat, and so Food Giant is entitled to judgment as a matter of law under *Ex parte Neese*. This court does not agree.

*Ex parte Neese* involved a private residence, rather than a business, which bears significance for this court since the analysis of "slip and fall" cases under Alabama law is fact intensive. Further, the evidence in *Ex parte Neese* was that the mat covered the width of a private walkway and was lying out in the rain. The facts of that case are, therefore, quite distinct from the facts in this case where Blizzard contends not only that she did not appreciate the hazard which the end cap posed, but also apparently contends that the eight inch high end cap which was a color at least similar to, if not the same as, the color of the floor was difficult to perceive at all.

Food Giant also contends that the end cap itself was surrounded by displays on three sides. Food Giant acknowledges, however, that Blizzard has denied in her deposition testimony that the location of one of the displays, a display of cereal boxes, was directly next to the end cap. Food Giant contends that this testimony by Blizzard is insufficient to create a question of fact, however, because she also testified that the cereal was displayed as depicted in a photograph taken of the scene after the incident in question.

Blizzard was asked in her deposition whether she remembered seeing the cereal boxes depicted in a photograph, and she said, "I saw these boxes, yes." Blizzard Deposition, page 65. In the same deposition, Blizzard stated that the stacked cereal was not beside the end cap, but was "over there next to the cereal." *Id.* at page 72: 18–21. In an interview two days after the incident, Blizzard stated that she either ran into the cereal and fell back on the pallet or tripped over the pallet somehow. Defendant's Exhibit 4, unnumbered page 3.[3] During the same interview, she stated that the end cap was at the end of the aisle and the cereal was "just over to the side." *Id.* at 4. Food Giant contends that it took a picture of the premises after the incident which depicts the cereal as being immediately adjacent to the end cap, but Blizzard unequivocally denies that the picture is a correct depiction of the way the end cap looked at the time of her fall. Blizzard Deposition, page 82: 14–15.

Although Blizzard's deposition testimony is unclear at certain points, she is unequivocal in her denial that the photograph relied on by Food Giant which depicts the scene, including the location of the cereal, is correct. That evidence, combined with the ambiguous nature of her statement in the interview, which when viewed in a light

---

3. Food Giant has relied on this evidence and Blizzard has not objected to its admissibility.

most favorable to the non-movant could be consistent with her deposition testimony that the cereal was not directly next to the end cap, causes the court to conclude that a question of fact has been raised as to whether the stacked cereal was directly adjacent to the end cap at the time of the incident. The court further concludes that this question of fact is sufficient to create a question as to whether an end cap the same, or similar, color as the floor, with a display on one side and with shelves behind it, but with no display on the remaining two sides was an open and obvious condition.

Food Giant also argues that Blizzard herself testified that had she been watching where she was walking, the end cap would have been open and obvious. Blizzard's testimony occurred as follows:

Q: Ma'am, looking here at the pallet I've brought here today, if you were watching where you were walking, would it be fairly obvious that this was on the floor in front of you?

A: Oh, yes, if you're watching where you're walking. Although you don't have your eyes on the floor all the time.

Blizzard Deposition page 69: 16–22.

During the interview after the incident, Blizzard stated that she was looking at the cereal at the time of the incident. Defendant's Exhibit 4, unnumbered pages 3–4.

In *Williams v. Bruno's, Inc.*, 632 So.2d 19 (Ala.1993), a plaintiff was asked why he did not see strips on the floor of the store if he had been watching where he was going. The plaintiff testified that he was not looking at the floor, he was there to shop. *Id.* at 22. The Alabama Supreme Court concluded that one could reasonably infer from the testimony that the plaintiff was focusing his attention on the shelves, not that he was not looking where he was going. *Id.* The court, therefore, reversed the summary judgment which had been granted in favor of the defendants on the negligence claim. *Id.*

Similarly, in this case, drawing all reasonable inferences in favor of the non-movant, the court must conclude that Blizzard's testimony does not entitle Food Giant to summary judgment because she could have been watching where she was going, but simply not looking at the floor. Food Giant attempts to distinguish *Williams* by stating that the plaintiff in that case was shopping at the time of his incident, while Blizzard was walking directly to the aisle where she was going to shop. The court cannot conclude, however, that there is a legally significant difference in this case between Blizzard's looking at cereal apparently intended by Food Giant to be viewed by customers while she was attempting to buy a particular product, and the plaintiff in *Williams* who was shopping for products on the shelves. The focus in *Williams* on the reason for the plaintiff's failure to perceive the danger also further demonstrates that this case does not fall within the *Bud's Outlet* rationale, because there is no evidence that Blizzard failed to see the end cap because she was distracted by her relatives, but instead there is evidence that she was looking at the products put in place by the Defendant.

Accordingly, the court concludes that there are material issues with respect to the negligence claims which must be resolved by the trier of fact and cannot be determined as a matter of law. Summary judgment is, therefore, due to be DENIED as to Blizzard's negligence claims.

■ Food Giant also moves for summary judgment on Blizzard's wantonness claim. "Wantonness" has been defined as "the doing of some act or the omission to do some act with reckless indifference that such act or omission will likely or probably result in injury." *IMAC Energy, Inc. v.*

*Tittle*, 590 So.2d 163, 169 (Ala.1991); *Ala. Code* § 6–11–20(b)(3)(1993). While one not need prove intentional conduct to prove wantonness, wantonness requires evidence of a reckless or conscious disregard of the rights and safety of others. *Wal–Mart Stores, Inc. v. Thompson*, 726 So.2d 651, 654 (Ala.1998).

> Wantonness may arise [when one has] knowledge that persons, though not seen, are likely to be in a position of danger, and with conscious disregard of known conditions of danger and in violation of law brings on disaster.... Wantonness may arise after discovery of actual peril, by conscious failure to use preventive means at hand.... Knowledge need not be shown by direct proof, but may be shown by adducing facts from which knowledge is a legitimate inference.
>
> *Smith v. Bradford*, 512 So.2d 50, 52 (Ala.1987).

■ Blizzard contends that because no precautions were taken to ensure customers' safety and the store manager was well aware of the condition of the empty end cap, genuine issues of material fact exist as to whether Food Giant recklessly and/or consciously disregarded the rights and safety of its customers. Food Giant disputes that knowledge that the end cap was empty is sufficient knowledge to create a question of fact as to wantonness. Food Giant argues that there has to be some evidence of knowledge that the empty end cap was a dangerous condition for there to be sufficient evidence to preclude summary judgment on the wantonness claim.

The Eleventh Circuit has examined the Alabama wantonness standard at length. *See Salter v. Westra*, 904 F.2d 1517 (11th Cir.1990). In *Salter*, the Eleventh Circuit explained that while knowledge of a condition and consciousness of the danger may be inferred, "negligence in not appreciating the dangerousness of the conditions is not wantonness." *Id.* at 1525. The court determined that a jury may not find wantonness simply on the basis of a defendant's awareness that his actions, or failure to act, would entail more risks than not taking the action in question. *Id.* The court reasoned that the distinction between negligence and wantonness can only be maintained if there is evidence that the risk of injury is "likely" or "probable." *Id.*

There is no evidence in this case which would tend to show that Smith, or anyone else at Food Giant, knew or should have known that a risk of injury from the empty end cap was likely or probable. This is not a case in which there was prior knowledge of injury from a hazardous condition. *See Boudousquie v. Marriott Management Services Corp.*, 669 So.2d 998, 1001 (Ala.Civ.App.1995)(sufficient evidence of wantonness where knew that condition was a hazard and was aware of a previous fall). Smith has testified in an affidavit that while he was manager of the store, he "never heard of anyone tripping over one of these end caps, and this is the first accident I know of involving an end cap." Smith Affidavit at ¶ 7. This court must conclude, therefore, that there is insufficient evidence to create an inference that Smith was recklessly indifferent that his act or omission would likely or probably result in injury. Summary judgment is, therefore, due to be GRANTED as to the wantonness claim.

## V. CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1. The Motion for Summary Judgment (Doc. # 13) is DENIED as to Blizzard's negligence claim and GRANTED as to her wantonness claim.

2. Judgment is entered in favor Food Giant Supermarkets, Inc. and against Dorothy Blizzard on the claim for wantonness

in Count Three of the Third Amended Complaint.