IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 23, 2014 Session

ARCHIE WOLFE v. WILLIAM C. FELTS, JR. ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT00538211     Robert L. Childers, Judge**

_____

**No. W2013-01995-COA-R3-CV - Filed May 29, 2014**

_____

In this premises liability action, Plaintiff/Appellant was allegedly injured when he slipped and fell on the subject property. The trial court granted a directed verdict to the Appellees, who are the property owners/occupiers. The basis for the directed verdict was that Appellant failed to submit evidence from which a reasonable juror could conclude either that the Appellees knew or should have known of a dangerous condition on the property, or that Appellees caused or created a dangerous condition on the property. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Al H. Thomas and Joshua D. Thomas, Memphis, Tennessee, for the appellant, Archie Wolfe.

James E. Conley Jr., Memphis, Tennessee, for the appellees, William C. Felts, Jr., and Linda M. Felts.

John H. Dotson, Memphis, Tennessee, for the appellees, Richard Johnson, Rebecca Lynn Johnson, and Empire Hair Studios, L.L.C.

**OPINION**

**Background**

On January 9, 2011, Archie Wolfe ("Plaintiff," or "Appellant") was allegedly injured when he slipped and fell on an icy street located outside property owned by William C. Felts, Jr. and Linda M. Felts (together, the "Feltses"). The Feltses rent the subject property to Richard Johnson and Rebecca Lynn Johnson (together, the "Johnsons"), who operate Empire Hair Studios, L.L.C. ("Empire," and together with the Johnsons and the Feltses, "Defendants," or "Appellees") at that location.

On November 30, 2011, Mr. Wolfe filed a complaint against the Appellees, wherein he alleged that a sprinkler system on the Appellees' property had created a dangerous condition on Appellees' property. Specifically, Mr. Wolfe alleged that the sprinkler system had begun operation despite the freezing temperatures and had caused ice to form on the sidewalk in front of Appellees' property. Because of the ice accumulation, Mr. Wolfe was forced to bypass the sidewalk and walk in the street. However, ice had also accumulated on the street, allegedly causing Mr. Wolfe to fall and sustain serious injuries. According to the complaint, "[Mr. Wolfe's] injuries were caused by negligent failure to properly manage the sprinkler system."

The case was tried to a jury on July 29, 2013. Although our record does not contain a verbatim transcript of the hearing, it does contain portions of the deposition testimony of Mr. Felts and Mr. Johnson. Although Mr. Felts testified at the trial, his testimony is not contained in the record.

Mr. Felts testified that the sprinkler system required "winterization," but he did not elaborate concerning what "winterization" would entail. Mr. Felts further testified that he was unaware that the sprinkler system was spraying water onto the property on the day of Mr. Wolfe's accident and, in fact, did not learn of the incident until he was served with the lawsuit at issue in this appeal.

Mr. Johnson testified that although he was aware of the sprinkler system on the property, he could not recall ever being informed that winterization of the system was required. In addition, Mr. Johnson testified that he had never used the sprinkler system during his tenancy on the property. Mr. Johnson also testified that from the time he rented the property in the summer of 2010 to the date of the incident, he never observed the sprinkler in operation other than on the date of the incident. Mr. Johnson testified that, [] on the morning of January 9, 2011, he received a call that there had been an accident on the property. The caller also opined that there appeared to be a burst water pipe on the property. When Mr. Johnson arrived at the property, he discovered that the sprinkler system, and not a burst pipe, was the cause of the water that had caused ice to form. According to Mr. Johnson, he first turned the water off to the entire property. Mr. Johnson then proceeded to the sprinkler system control box to investigate. He found the door of the box "ajar," and the

-2-

valve inside in the "open" position. Mr. Johnson used a wrench to turn the valve to the closed position, which stopped the flow of water to the sprinkler head.

At the close of Mr. Wolfe's proof, Appellees moved for a directed verdict. As grounds for the motion, Appellees asserted that Mr. Wolfe had failed to introduce any evidence concerning what would constitute proper sprinkler management or maintenance so as to establish that improper management or maintenance had caused the sprinkler to malfunction. The Appellees further argued that there was no proof that the Appellees knew or should have known of the hazardous condition, i.e., the ice, on the property at the time of the accident. The Appellees asserted that no evidence showed any prior problems with the sprinkler system that would put the Appellees on notice that it could malfunction. The trial court took the matter under advisement and directed the parties to return to court to argue the motion the following morning.

On July 30, 2013, the trial court orally granted the motion for a directed verdict in favor of the Appellees. On August 2, 2013, the trial court entered a written order granting the Appellees' motion for a directed verdict and incorporating by reference its previous oral ruling. According to the Court:

> I have considered the evidence that the Plaintiff has introduced in this case that consists of the testimony of the Plaintiff and Mr. [] Felts [] and Mr. [] Johnson.
> In a motion for [a] directed verdict, the Court is required to indulge every reasonable inference in favor of the Plaintiff's theory and disregard or ignore any opposing inferences.
> The Plaintiff, Mr. Wolfe, testified that he was out walking early one morning and he saw the sprinkler system on at the [Appellees'] premises.
> Mr. Johnson's testimony was that he has no experience with an underground sprinkler system. He never set the clock or did anything with the sprinkler system. He knew where the controls were located in the corner of the yard. He never took the top off the control box. And on January the 9th, 2011 was the first time that he looked at the control box.
> After he went to the premises on the morning of January 9th, 2011, he went to the sprinkler control box to try to figure out why the sprinkler was going off. He discovered that the cover was already off one of the control boxes and was laying in the vicinity of the control box.
> There is no proof in the record how the cover came off of

-3-

the box and no proof that the [Appellees] had notice or, in the exercise of reasonable care, should have had notice that the cover was off of the box before the sprinkler inadvertently came on.

Mr. Felts testified that he knew the system had to be winterized. He did not testify or explain what winterizing means or what is involved in winterizing. There is no proof that winterizing includes turning the water supply off to the sprinkler system.

Mr. Felts never testified that the water supply was turned off when it had to be winterized. The jury would have to speculate that winterizing means turning off the water supply to the system.

Based on Plaintiff's proof, the inference that the failure to winterize, which I think I understand the Plaintiff's theory to be, there's the inference that the failure to winterize caused the system to turn on inadvertently is not a reasonable inference absent proof of what winterizing means.

Absent that proof, the Plaintiff's only proof is that when he approached the premises, the sprinkler system was on.

The jury would have to speculate about the cause of the sprinkler system inadvertently coming on. There's no proof of the cause of the sprinkler system coming on and no proof that the [Appellees] had or reasonably should have had notice that the sprinkler system had inadvertently come on on the morning of January 9th, 2011.

The motion for [a] directed verdict is granted. . . .

Mr. Wolfe now appeals.[1]

---

[1] While this appeal was pending, several procedural issues arose. First, on January 22, 2014, this Court granted the Appellees' Joint Motion to Correct the Record on Appeal. In this motion, the Appellees asserted that the depositions of Mr. Wolfe and Jennifer Holbourn had been improperly transmitted to this Court as part of the record on appeal. The Appellees asserted that these depositions were not properly included in the record because they were not read into evidence at trial. Thereafter, on January 24, 2014, the Appellees filed another Joint Motion to Strike References in Mr. Wolfe's appellate brief to evidence that was not properly part of the record. Specifically, the Appellees asserted that Mr. Wolfe's appellate brief contained references to Mr. Wolfe's deposition testimony, which testimony was not properly a part of the record on appeal. Mr. Wolfe did not timely file a response to the Motion. This Court granted the Appellees' Joint Motion on February 13, 2014. Accordingly, in this appeal, we will not consider any references to Mr. Wolfe's deposition testimony.

**Issues Presented**

Mr. Wolfe raises one issue, which is taken, and slightly altered, from his brief:

> Did the Circuit Court err in granting Appellees' motion for a directed verdict on the basis that there was no "proof that winterizing includes turning the water supply off to the sprinkler system" and that, therefore, the "jury would have to speculate that winterizing means turning off the water supply to the system."

**Standard of Review**

According to the Tennessee Supreme Court,

> This Court reviews the trial court's decision to grant a directed verdict *de novo,* applying the same standards as the trial court. **Gaston v. Tenn. Farmers Mut. Ins. Co.**, 120 S.W.3d 815, 819 (Tenn. 2003). We will affirm a directed verdict "only when the evidence in the case is susceptible to but one conclusion." **Childress v. Currie**, 74 S.W.3d 324, 328 (Tenn. 2002) (citing **Eaton** [**v. McLain**], 891 S.W.2d [587,] 590 [(Tenn. 1994)]). We must "take the strongest legitimate view of the evidence favoring the opponent of the motion," and must accept all reasonable inferences in favor of the nonmoving party. [**Childress**, 74 S.W.3d at 328.] We may affirm the motion "only if, after assessing the evidence according to the foregoing standards, [we] determine[ ] that reasonable minds could not differ as to the conclusions to be drawn from the evidence." **Id.**; *see also* **Cecil v. Hardin**, 575 S.W.2d 268, 270 (Tenn.1978).

**Biscan v. Brown**, 160 S.W.3d 462, 470 (Tenn. 2005).

**Analysis**

The issue in this case concerns whether Mr. Wolfe submitted evidence from which a reasonable juror could conclude that the Appellees were negligent. The specific issue in this case concerns premises liability. This Court recently explained the *prima facie* elements of a premises liability action:

To establish a *prima facie* case for premises liability based upon negligence, the plaintiff must prove (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant that was below the standard of care, amounting to a breach of a duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation. *See, e.g.,* **Coln v. City of Savannah**, 966 S.W.2d 34, 39 (Tenn. 1998), overruled on other grounds by **Cross v. City of Memphis**, 20 S.W.3d 642, 644 (Tenn. 2000). For the premises owner to be liable for a dangerous and defective condition on his property, the plaintiff must prove each of the elements of negligence and either (1) that the condition was caused or created by the premises owner or his agent, or (2) if the condition was created by someone other than the owner or his agent, that the premises owner had actual or constructive notice of the dangerous or defective condition prior to the accident. **Blair v. West Town Mall**, 130 S.W.3d [761,] at 764 [(Tenn. 2004)]. A plaintiff can establish constructive notice by showing "a pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence," making the dangerous condition reasonably foreseeable to the premises owner. **Id.** at 765–66. In the alternative, constructive notice can be established by proving that the dangerous condition existed for a sufficient length of time that the premises owner, by exercising due care, should have discovered the dangerous condition. **Simmons v. Sears, Roebuck & Co.**, 713 S.W.2d 640, 641–42 (Tenn. 1986); *see also* **Blair**, 130 S.W.3d at 764, 766 n.1.

**Williams v. Linkscorp Tennessee Six, L.L.C.**, 212 S.W.3d 293, 296 (Tenn. Ct. App. 2006).

It appears that Mr. Wolfe concedes, in his brief, that none of the Appellees had either actual or constructive notice of the dangerous condition on the property prior to Mr. Wolfe's accident. *See* **Blair v. West Town Mall**, 130 S.W.3d at 764. Indeed, from our review of the record, Mr. Wolfe submitted no evidence to show that any of the Appellees had either actual or constructive notice of the allegedly dangerous condition on the property prior to Mr. Wolfe's accident. Rather, Mr. Wolfe argues that the Appellees were negligent because "the condition was caused or created by the premises owner or his agent." **Id.** Specifically, in his brief, Mr. Wolfe argues that regardless of what the term "winterizing" means, the negligence in this case involves "allowing water to spray in freezing temperatures, something that cannot happen if the water source to the sprinkler system is properly shut off, whether or not this is

done as part of an overall 'winterization' effort." Accordingly, Appellees argue that the trial court's focus on "winterization" was misplaced.

A plaintiff is not required to prove a premises owner had prior notice of a dangerous condition if the premises owner created the condition that caused a plaintiff's injury. *Longmire v. Kroger Co.*, 134 S.W.3d 186, 189 (Tenn. Ct. App. 2003) (citing *Stringer v. Cooper*, 486 S.W.2d 751, 757 (Tenn. Ct. App. 1972)). As explained in American Jurisprudence:

> The rule requiring actual or constructive knowledge of the dangerous condition on the part of the [property] owner in order to hold him or her liable does not apply where the dangerous condition was caused or created by the [property] owner or by persons for whose conduct the [property] owner is responsible; in other words, where the condition is traceable to an act of the [property] owner or his or her employees, it is not necessary to prove that the [property] owner was aware of the condition in order to hold him or her liable for injuries resulting therefrom. Thus, . . . a store owner was properly held liable for injuries sustained by a customer in a slip-and-fall accident in running water, where there was sufficient evidence from which one could infer that the store's negligent maintenance of the drainage system in the store created the dangerous condition, so that there was no need for proof that the owner had notice of the condition.

62A Am. Jur. 2d *Premises Liability* § 482 (footnotes omitted). Accordingly, the resolution of this case turns on whether there is "sufficient evidence from which one could infer that the [Appellees'] negligent maintenance of the [sprinkler] system . . . created the dangerous condition." *Id.* (citing *Wal-Mart Stores, Inc. v. Rolin*, 813 So.2d 861 (Ala. 2001)). However, "[w]hen there is a complete absence of proof as to when and how the dangerous condition came about, it would be improper to permit the jury to speculate on these vital elements." *Ogle v. Winn-Dixie Greenville, Inc.*, 919 S.W.2d 45, 47 (Tenn. Ct. App. 1995) (citing *Paradiso v. Kroger Co.*, 499 S.W.2d 78 (Tenn. Ct. App.1973)). "A case does not have to be submitted to a jury where there is a mere spark or glimmer of evidence. There must be some evidence of a material and substantial nature." *Ogle*, 919 S.W.2d at 47 (citing *Sadek v. Nashville Recycling Co.*, 751 S.W.2d 428, 431 (Tenn. Ct. App.1988)).

Compared to cases involving allegations that a property owner had actual or constructive notice of a dangerous condition on their property, few cases in Tennessee have

dealt with premises liability predicated on a theory that the property owner caused or created the dangerous condition on the property. *See* ***Workman v. Wal-Mart Stores East, Inc.***, No. M2001-00664-COA-R3-CV, 2002 WL 500988, at *2 (Tenn. Ct. App. April 4, 2002) ("In reviewing cases of this type it is rare indeed when a premises liability case is based on a dangerous condition or defect created by the business owner. The vast majority of these cases fall into the second category of claims, where the defect or condition is caused by someone else and the assertion is that the business owner was negligent in failing to address the dangerous condition or defect after he had actual or constructive notice of the dangerous condition or defect."). In fact, Mr. Wolfe cites no cases in his brief to support his assertion that the directed verdict was improperly granted in this case.

In contrast, the Appellees assert that the facts presented here are analogous to the situation presented in ***Hardesty v. Service Merchandise***, 953 S.W.2d 678 (Tenn. Ct. App. 1997). In ***Hardesty***, the plaintiff asserted that she tripped over a bed rail that was on display in the defendant store. At trial, neither the plaintiff or her companion on the day of the accident were able to testify as to how the rail came to be in the aisle. The jury subsequently found the defendant liable for $400,000.00 in damages to the plaintiff and her husband. The trial court, however, found that the jury verdict was "so excessive" that a new trial was required. After the case was transferred to a different trial judge, the defendant filed a motion for summary judgment on the plaintiff's premises liability claim, citing the plaintiff's trial testimony in which she could not testify as to the cause of the rail being in the aisle. The trial court granted the defendant's summary judgment motion. On appeal, this Court affirmed, concluding:

> Plaintiff[] ha[s] been unable to show that [d]efendant created the dangerous condition by placing the bed rail in the aisle. Both [plaintiff] and her daughter . . . admitted that they did not know who placed the bed rail in the position it was in when [plaintiff] fell over it. Similarly, [p]laintiff[] ha[s] not produced any evidence to suggest that [d]efendant had actual knowledge of the condition prior to the accident nor have they shown how long the bed rail had been in the aisle. In fact, both [daughter] and [plaintiff] admitted at trial and in their depositions that they did not know how long the bed rail had been in the aisle.
>
> It appears that [p]laintiff[ is] unable to establish a prima facie case of negligence for [plaintiff's] injuries because they are unable to offer any proof that [d]efendant either knew of or had constructive knowledge of the allegedly dangerous condition.

*Id.* at 684.[2] Thus, the plaintiff in **Hardesty** failed to present sufficient evidence to allow the jury to conclude that the defendant had created the dangerous condition. As such, any conclusion by the jury that the defendant had created the dangerous condition would have been impermissible speculation. *See **Ogle***, 919 S.W.2d at 47.

In a similar case cited in American Jurisprudence, **Wal-Mart Stores, Inc. v. Rolin**, 813 So.2d 861 (Ala. 2001), the Alabama Supreme Court held, in contrast to **Hardesty**, that the plaintiff had presented sufficient evidence that took the question of whether the defendant caused or created the dangerous condition out of the realm of speculation. *Id.* at 863–65. In **Rolin**, the plaintiff sought damages from defendant Wal-Mart for injuries he undisputedly sustained after tripping over a barbeque grill display in a Wal-Mart store. *Id.* at 863. According to the Alabama Supreme Court, it was undisputed that Wal-Mart had constructed the display using concrete stepping stones. *Id.* The jury eventually returned a verdict in favor of the plaintiff and Wal-Mart appealed, arguing that "evidence demonstrated that Wal-Mart did not create a hazard and did not know that a hazard existed." *Id.*

The Alabama Supreme Court, however, disagreed. According to the Court, the plaintiff need not show that Wal-mart had actual or constructive notice of a dangerous condition on its property so long as the plaintiff could show that Wal-Mart or its agents caused or created the dangerous condition. *Id.* at 864. Instead, in that situation, the Alabama Supreme Court held that "the courts presume notice." *Id.* at 864 (quoting **Wal-Mart Stores, Inc. v. McClinton**, 631 So.2d 232, 234 (Ala. 1993)). The **Rolin** Court analogized the situation to when a fixture in a store protrudes into the aisle, *see **McClinton***, 631 So.2d at 234 (involving a gun cabinet protruding into the aisle of a store), or when the alleged defect is part of the premises, such as loose flooring. *See **Mims v. Jack's Restaurant**, 565 So.2d

---

[2] Special Judge Paul G. Summers filed a separate concurring opinion encouraging the Tennessee Supreme Court to "revisit this area of law." While Special Judge Summers did not disagree with the majority's conclusion based upon the law as it stood, Judge Summers questioned whether Tennessee law placed an insurmountable burden on plaintiffs in premises liability action. *See **Hardesty***, 953 S.W.2d at 685 (Summers, J., concurring) (arguing that the "rules place an insurmountable burden on the innocent injured plaintiff").

    The Tennessee Supreme Court, however, denied *certiorari* in **Hardesty** on June 30, 1997. Further, our courts have consistently reaffirmed the requirement in premises liability cases that the plaintiff bears the burden to prove either that the property owner created or caused the dangerous condition or had actual or constructive notice of a dangerous condition created by a third party. *See, e.g.*, **Blair v. West Town Mall**, 130 S.W.3d 761, 764 (Tenn. 2004); **Piana v. Old Town of Jackson**, 316 S.W.3d 622, 630 (Tenn. Ct. App. 2009); **Berry v. Houchens Market of Tennessee, Inc.**, 253 S.W.3d 141, 146–47 (Tenn. Ct. App. 2007); **Williams v. Linkscorp Tennessee Six, L.L.C.**, 212 S.W.3d 293, 296 (Tenn. Ct. App. 2006); **Lawson ex rel. Lawson v. Edgewater Hotels, Inc.**, 167 S.W.3d 816, 824 (Tenn. Ct. App. 2004). Accordingly, the holding in **Hardesty** remains good law.

609, 610 (Ala.1990) (involving a loose threshold at the door of the defendant's restaurant). Because it was undisputed that Wal-Mart created the display that allegedly caused the plaintiff to trip, the Alabama Supreme Court held that the plaintiff had made out a *prima facie* claim for premises liability against Wal-Mart. ***Rolin***, 813 So.2d at 864–65. Accordingly, the Court held that the trial court properly allowed the issue to be considered by the jury. ***Id.***

Turning to the facts in this case, we must agree with the trial court that Mr. Wolfe failed to submit any evidence that would take the question of negligence out of the realm of speculation. The record on appeal contains the deposition testimony of both Mr. Felts and Mr. Johnson. Mr. Felts testified that he was aware of the sprinkler system and was aware that the sprinkler system required winterization. However, neither Mr. Felts nor any other witness testified as to what was required to winterize a sprinkler system. Although Mr. Johnson testified that he had a "general conversation" with Mr. Felts regarding the sprinkler system, nothing in Mr. Johnson's testimony indicates that he was aware of any need to winterize the system or that he was aware of how to perform that action prior to Mr. Wolfe's accident. Accordingly, the trial court correctly concluded that the jury would be required to speculate as to what was required in order to winterize a sprinkler system.

Further, Mr. Johnson's undisputed testimony indicates that the sprinkler was operating on the day of the incident because the control valve was in the "open" position, rather than the "closed" position. Unlike in ***Rolin***, here it is disputed as to what caused the sprinkler system to turn on, resulting in the dangerous condition on the date of the incident. While Mr. Wolfe asserts that the condition was created by a malfunction in the sprinkler system that could have been averted by turning the water supply to the sprinkler system off, there is simply no affirmative evidence in the record to support that assertion. Having considered Mr. Johnson's testimony, the cause of the sprinkler system turning on may possibly have been the result of a malfunction, or possibly the result of the actions of a third party. Indeed, because the evidence shows that the tenant of the property did not utilize the sprinkler system, there is no evidence in the record that the water supply to the sprinkler system was, in fact, not turned off by one of the Appellees prior to the incident at issue, and then turned on by a third party. As such, it would be pure speculation for the jury to conclude that the dangerous condition (i.e., the sprinkler operating in freezing conditions) was actually caused or created by any negligence on the part of the Appellees. Consequently, this case is more closely analogous to ***Hardesty***, where there was simply no evidence presented by the plaintiff regarding the cause of the dangerous condition. Under these circumstances, the jury would be required to speculate as to the cause of dangerous condition. We recognize, as did Special Judge Summers in the ***Hardesty*** Opinion, that the prevailing law creates a stringent framework that a plaintiff must navigate in order to prevail in a premises liability action, particularly for Mr. Wolfe, who was allegedly injured as a result of the dangerous condition

and is unable, himself, to testify as to the cause of that condition. *See **Hardesty***, 953 S.W.2d at 685 (Summers, J., concurring). However, applying well-established Tennessee law to the facts of this case, even considering Mr. Wolfe's evidence in the light most favorable to his case, and disregarding any countervailing proof, the evidence simply does not allow a reasonable trier of fact to make a reasonable inference that the dangerous condition was caused or created by the Appellees. Accordingly, the judgment of the trial court is affirmed.

**Conclusion**

The judgment of the Circuit Court of Shelby County is affirmed and this cause is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed to Appellant Archie Wolfe, and his surety.

_____
J. STEVEN STAFFORD, JUDGE