On Application for Rehearing.
 

 THOMAS, Judge.
 

 The opinion of this court issued on November 16, 2007, is withdrawn, and the following opinion is substituted therefor. Ray Edwards appeals from a summary judgment in favor of Intergraph Services Company, Inc., in a premises-liability case. We affirm.
 

 Edwards is a police officer with the City of Madison Police Department and a member of the Madison Police Department’s
 
 *498
 
 Special Weapons and Tactics (“S.W.A.T.”) team. On July 2, 2002, Edwards was on Intergraph’s property — specifically, in In-tergraph’s gymnasium — to participate in the S.W.A.T. team’s exercise and weight-training program. Edwards alleged that he was injured when his tennis shoe “got caught” in one of the triangular perforations designed into the flooring material used for the basketball court at Inter-graph’s gym.
 

 Facts and Procedural History
 

 On July 1, 2004, Edwards sued Inter-graph, alleging that its negligence and wantonness had proximately caused him to suffer a permanent injury; the City of Madison, alleging that he was entitled to benefits under § 25-5-1 et seq., Ala.Code 1975, the Alabama Workers’ Compensation Act;
 
 [1]
 
 and several fictitiously named defendants, alleging, among other things, a product-liability claim based upon the Alabama Extended Manufacturer’s Liability Doctrine.
 
 [2]
 

 Intergraph moved for a summary judgment, attaching a brief, excerpts from the deposition testimony of Edwards and Angelo Azzarello, an Intergraph employee, and a photocopy of a sample of the flooring material used on the Intergraph basketball court. Edwards filed a response in opposition to Intergraph’s motion, attaching a brief, excerpts from his deposition testimony, his affidavit, excerpts from Azzarello’s deposition testimony, and the affidavit of Russell J. Kendzior, an expert witness. Intergraph moved to strike Kendzior’s affidavit; the trial court did not rule on that motion.
 

 On December 4, 2006, the trial court entered a judgment in favor of Intergraph and certified that judgment as final pursuant to Rule 54(b), Ala. R. Civ. P. Edwards filed a timely postjudgment motion on December 28, 2006. The trial court denied that motion on January 2, 2007. Edwards timely appealed to the Alabama Supreme Court on February 12, 2007. The supreme court transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
 

 Edwards testified by deposition that the Madison S.W.A.T. team trained at Inter-graph’s gym on alternating Tuesdays. He said that on July 2, 2002, he had finished his weight-lifting routine and was walking onto the basketball court to join a basketball game with other police officers when he turned and felt his shoe catch on a small triangular hole in the design of the flooring material. He said that his shoe, which he described as a standard tennis or athletic shoe, had a “pimply-soled bottom.” He testified that he no longer had the shoes that he was wearing that day. Edwards described the incident as follows:
 

 “I was on the basketball court and I got ready to turn. My tennis shoe got caught in one of the holes in the floor. Halfway in my turn, I felt something — I thought it was a weight that hit the back of my ankle. I fell to the ground and looked around to see what happened. I didn’t see anybody, didn’t see any weights. I realized my foot was dangling.”
 

 Edwards added, “I just know my shoe got caught by one of the holes. It restricted my foot from turning.” Edwards said that he had played on the basketball court two or three times before without a problem. He stated that, before the injury, he had not seen anything on the floor that needed
 
 *499
 
 repairing. After the injury, Edwards was transported to a local hospital where he was diagnosed with a ruptured Achilles tendon.
 

 Angelo Azzarello, an Intergraph employee who worked as an exercise specialist and the supervisor of the Intergraph gym, testified by deposition that in the early 1990s Intergraph had purchased the flooring for its first gym from a company that specialized in floor coverings for sports surfaces. Azzarello stated that he had not been involved in selecting the flooring for the gym, but he understood that one consideration in deciding to purchase the flooring was its portability; it was composed of interlocking four-foot by eight-foot sheets that could be disassembled and reassembled in a new location. The flooring was later moved to another location— the second gym, where Edwards was hurt — and then donated to a charitable organization when Intergraph built a new gym and purchased new equipment before Edwards filed the present lawsuit.
 

 Azzarello testified that he did not know that Edwards had been injured at the Intergraph gym on July 2, 2002, until he read Edwards’s complaint two years later. He said that, at the time Edwards was injured, the flooring on the basketball court had been in use for 14 years without complaint or injury of any kind. Azzarello said that he had not recognized any potential hazard in the design of the flooring material and that he had never considered that “people’s shoes might get caught in the floor.” Azzarello stated that Inter-graph does not open its gym to the general public. He explained, however, that Inter-graph provides the Madison S.W.A.T. team with access to the facility “as a courtesy.”
 

 The affidavit of Russell J. Kendzior stated that Kendzior was the founder, president, and chief executive officer of Traction Plus, Inc., a company that provides product and safety consulting services with respect to floor coverings and walkway surfaces. Kendzior stated that in formulating his opinions in this case he had reviewed the pleadings, the deposition testimony of Edwards and Azzarello, a photograph of a sample of the flooring material in Intergraph’s gym, and applicable industry standards related to walkway surfaces. Kendzior opined:
 

 “Although solid surface plastic tile is appropriate for sports related applications, it is important to use the correct type of material. Perforated plastic tile, like that used in this case, is designed for wet area applications such as a shower, swimming pool deck, or locker room, where water is present and may present a slip-and-fall hazard. Such materials are appropriate in areas where pedestrians are barefoot or in exterior applications where water may be present from rain.
 

 “However, the appropriate type of tile or surface for dry, indoor applications, especially indoor applications where pedestrians are wearing athletic footwear, is that of a solid surface (non-perforated) type. The tile in question was produced in such a way that each tile is supported by hundreds of small, rigid plastic cleats. It is common for these small plastic cleats to bend or break when exposed to heavy forces like that generated by athletic activity like running, jumping, and/or weight-lifting. When heavy forces are applied to the perforated plastic tile, the small triangular sections on the tiles’ surface can break or expand apart thus compromising the structural integrity of the tiles’ surface thus exposing the pedestrian to a trip hazard. When such a compromise occurs, the hazard is often not even noticeable because the crack or break in the triangular section can be small or if the triangu
 
 *500
 
 lar section is distorted by the force placed upon it, it can return to its normal position after the force is withdrawn.
 

 “Additionally, the small triangular sections, though relatively small, are large enough to cause the cleats/bumps found on the bottoms of running, tennis and training athletic shoes to stick in the triangular holes and expose the pedestrian to a trip hazard, especially if the pedestrian is engaged in athletic activity like turning or cutting/changing directions with his feet, like Mr. Edwards was engaged in at the time of his fall. It is my opinion that the use of the subject perforated tile in a gym setting where athletic activity frequently occurs, as it was in the case of Mr. Edwards’ injury, constituted a trip hazard.”
 

 Standard of Review
 

 Appellate review of a summary judgment is de novo.
 
 Ex parte Ballew,
 
 771 So.2d 1040 (Ala.2000). A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c)(3);
 
 see Lee v. City of Gadsden,
 
 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ”
 
 Lee,
 
 592 So.2d at 1038 (footnote omitted). “[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.”
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989);
 
 see
 
 § 12-21-12(d), Ala.Code 1975.
 

 Discussion
 

 “[T]he duty owed by the landowner to a person injured on his premises because of a condition on the land is dependent upon the status of the injured party in relation to the land.”
 
 Christian v. Kenneth Chandler Constr. Co.,
 
 658 So.2d 408, 410 (Ala.1995).
 

 “ ‘The three classifications of persons coming onto the land are trespasser, licensee, and invitee .... In order to be considered an invitee, the plaintiff must have been on the premises for some purpose that materially or commercially benefited the owner or occupier of the premises.’ ”
 

 Ex parte Mountain Top Indoor Flea Market, Inc.,
 
 699 So.2d 158, 161 (Ala.1997) (quoting
 
 Sisk v. Heil Co.,
 
 639 So.2d 1363, 1365 (Ala.1994)). “The distinction between a visitor who is a licensee and one who is an invitee turns largely on the nature of the visit which brings the visitor on the premises rather than the acts of the owner which precedes the visitor’s coming.”
 
 Nelson v. Gatlin,
 
 288 Ala. 151, 154, 258 So.2d 730, 733 (1972), overruled on other grounds by
 
 Standifer v. Pate,
 
 291 Ala. 434, 436, 282 So.2d 261, 263 (1973). “One who enters the land of another, with the landowner’s consent, to bestow some material or commercial benefit upon the landowner is deemed an invitee of the landowner.”
 
 Davidson v. Highlands United Methodist Church,
 
 673 So.2d 765, 767 (Ala.Civ.App. 1995).
 
 See also Restatement (Second) of Torts
 
 § 332 (1965):
 

 “(1) An invitee is either a public invitee or a business visitor.
 

 “(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.
 

 
 *501
 
 “(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings of the possessor of the land.”
 

 “On the other hand, a person who enters the land of another with the landowner’s consent or as the landowner’s guest, but without a business purpose, holds the legal status of a licensee.”
 
 Davidson v. Highlands United, Methodist Church,
 
 673 So.2d at 767.
 
 See also Restatement (Second) of Torts
 
 § 330 (1965) (stating that “[a] licensee is a person who is privileged to enter or remain on land only by virtue of the possessor’s consent”).
 

 “A landowner owes an invitee a duty to keep the premises in a reasonably safe condition and, if the premises are unsafe, to warn the invitee of defects and dangers that are known to the landowner but are unknown or hidden to the invitee; a landowner owes a licensee a duty to abstain from willfully or wantonly injuring the licensee and to avoid negligently injuring the licensee after the landowner discovers a danger to the licensee.”
 

 Prentiss v. Evergreen Presbyterian Church,
 
 644 So.2d 475, 477 (Ala.1994).
 

 Intergraph maintains that Edwards was a licensee because, it says, it allowed Edwards and the other members of the Madison S.W.A.T. team to train in Intergraph’s gym merely “as a courtesy”; it insists that the police officers’ being on the premises conferred no material benefit on Inter-graph. Edwards contends that he was an invitee because, he says, Intergraph allowed the members of the Madison S.W.A.T. team to use its gym facilities with the expectation of a material benefit. In support of that contention, Edwards submitted his own affidavit, which states, in pertinent part:
 

 “[W]hile the Defendant Intergraph has allowed City of Madison Police personnel and other police departments’ personnel to utilize their gym facilities, this has always provided a material benefit to the Defendant Intergraph Services Company, Inc. I have talked to Angelo Azzarello on different occasions about why City of Madison police personnel and other officers from other police departments use the Defendant Inter-graph’s gym and facilities. Mr. Azzarel-lo told me that Intergraph wanted police officers like me present at Intergraph and in its gym to prevent or discourage trouble that may arise in Intergraph’s gym or on its premises. He said that police officers drive their patrol cars to Intergraph and otherwise maintain a highly visible profile while working out at the gym. Mr. Azzarello even informed me that he appreciated the City of Madison police and me coming to the gym to work out because he had had trouble from certain people at his gym and the presence of the police helped prevent trouble from occurring.
 

 “Additionally, other Intergraph employees have approached me while I have worked out at Intergraph’s gymnasium to thank me and tell me how much they appreciate me and other police officers working out at the gym. The In-tergraph employees have informed me that there had been people who had caused trouble and that the presence of police officers from the City of Madison and other departments made them feel safe and also helped to prevent trouble and incidents from occurring.
 

 “Also, on several occasions while I was working out at Intergraph’s gym, I had Intergraph personnel approach me to inform me of suspicious activity and would ask me to investigate. Mr. Azza-rello has even approached me to investigate a person at the gym whom he
 
 *502
 
 suspected to be intoxicated. On another occasion, I broke up a fight between two Intergraph employees and helped escort them off the gym premises.
 

 “Additionally, during the years that I worked out at Intergraph’s gym, I have known Intergraph to have only one security guard to work on duty during a shift at the whole facility at any one time.
 

 “It is a common occurrence for businesses in the community to invite police officers into their stores, restaurants and other establishments to keep a police presence to help prevent crime or other problems from occurring.”
 

 Intergraph submitted no evidentiary material to refute Edwards’s affidavit.
 

 “As a general rule, the question whether a plaintiff is a licensee or is an invitee is factual, and should therefore be resolved by the trier of fact.”
 
 Walker v. Mitchell,
 
 715 So.2d 791, 793 (Ala.CivApp. 1997). However, if the facts surrounding the plaintiffs entry onto the defendant’s premises are not in dispute, then the question becomes one of law.
 
 See Ingram v. Akwell Indus., Inc.,
 
 406 So.2d 897, 899
 
 &
 
 n. 1 (Ala.1981) (stating that “the cumulative effect of the totality of the circumstances ... leaves no factual issue to be resolved [as to the] legal status” of the plaintiff).
 

 The allegations of Edwards’s affidavit indicate that Intergraph benefited from having police officers on its premises because the presence of the police tended to discourage criminal activity and to make the Intergraph employees feel safe. Those allegations permit the inference that Intergraph allowed the police officers to use its gym facilities with the expectation of receiving such benefits. Although we do not hold that Edwards was an invitee as a matter of law, we conclude that Edwards presented substantial evidence creating a genuine issue of material fact as to whether he was an invitee.
 

 Generally, an invitee must show not only that he was injured as the result of a defective condition on the owner’s premises, but also that the owner knew or should have known of the defective condition.
 

 “A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
 

 “a)
 
 knows or by the exercise of reasonable care would discover the condition,
 
 and should realize that it involves an unreasonable risk of harm to such invitees, and
 

 “b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
 

 “c) fails to exercise reasonable care to protect them against the danger.”
 

 Restatement (Second) of Torts
 
 § 343 (1965) (emphasis added). Alabama law follows the
 
 Restatement
 
 formulation for imposing liability grounded in defects on the premises.
 
 See Hale v. Sequoyah Caverns & Campgrounds, Inc.,
 
 612 So.2d 1162, 1164 (Ala.1992) (stating that, in order for the plaintiff to recover, she must show that her injury “resulted from a defect or instrumentality on the premises;
 
 that the defect was the result of the defendant’s negligence; and that the defendant had or should have had notice of the defect before the time of the accident”
 
 (emphasis added) (citing
 
 Shaw v. City of Lipscomb,
 
 380 So.2d 812 (Ala.1980))); and
 
 Tice v. Tice,
 
 361 So.2d 1051, 1052 (Ala.1978).
 

 A premises owner owes his invitees a duty to keep the premises in a reasonably safe condition and to warn them of any
 
 “defects and dangers that are known to the landowner but are unknown
 
 
 *503
 

 or hidden to the invitee[s].” Prentiss v. Evergreen Presbyterian Church,
 
 644 So.2d at 477 (emphasis added); and
 
 Howard v. Andy’s Store for Men,
 
 757 So.2d 1208, 1210 (Ala.Civ.App.2000). A premises owner, however, owes no duty to protect invitees from all conceivable dangers they might face while on the premises because “ ‘[t]he owner of a premises ... is not an insurer of the safety of his invitees ... and the principle of res ipsa loquitur is not applicable. There is no presumption of negligence which arises from the mere fact of an injury to an invitee.’”
 
 Ex parte Harold L. Martin Distrib. Co.,
 
 769 So.2d 313, 314 (Ala.2000) (quoting
 
 Tice v. Tice,
 
 361 So.2d at 1052). See
 
 also Kmart Corp. v. Bassett,
 
 769 So.2d 282, 286 n. 4 (Ala. 2000) (holding that the principle of res ipsa loquitur does not apply to premises-liability claims).
 

 Instead, “ ‘[t]he entire basis of an invitor’s liability rests upon his superior knowledge of the danger which causes the invitee’s injuries. Therefore, if that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable.’ ”
 
 Jones Food Co. v. Shipman,
 
 981 So.2d 355, 363 (Ala.2006) (quoting
 
 Quillen v. Quillen,
 
 388 So.2d 985, 989 (Ala. 1980)).
 
 See also Denmark v. Mercantile Stores Co.,
 
 844 So.2d 1189,1194 (Ala.2002); and
 
 Lamson & Sessions Bolt Co. v. McCarty,
 
 234 Ala. 60, 63, 173 So. 388, 391 (1937).
 

 There are exceptions to the rule that an invitee must present substantial evidence not only that his or her injury was caused by a dangerous or defective condition on the premises but also that the premises owner had or should have had notice of the dangerous or defective condition. Those exceptions apply — and the invitee need not make a prima facie showing that the premises owner knew or should have known of the defective condition at the time of the invitee’s injury — when (1) the premises owner has affirmatively created the defective condition,
 
 see, e.g., Denmark v. Mercantile Stores, Inc.,
 
 supra (customer who tripped over a roll of plastic shopping bags was not required to establish store’s actual or constructive knowledge of the hazard because the store’s employees created the hazard);
 
 Wal-Mart Stores, Inc. v. Rolin,
 
 813 So.2d 861, 864 (Ala.2001) (customer who tripped over a barbecue grill that was protruding from a box was not required to establish store’s actual or constructive knowledge of the dangerous condition when the store’s employees created the dangerous condition); and
 
 Wal-Mart Stores, Inc. v. McClinton,
 
 631 So.2d 232, 234 (Ala.1993) (customer who jammed his foot on a gun cabinet protruding into the store aisle was not required to establish store’s actual or constructive knowledge of the hazardous condition when evidence indicated that hazardous condition was created by store’s employees), or (2) the premises owner has failed to perform a reasonable inspection or maintenance of the premises to discover and remedy the defective condition,
 
 see, e.g., Kmart Corp. v. Peak,
 
 757 So.2d 1138 (Ala.1999) (holding that notice of defect in store’s automatic door would be imputed to the store based on the store’s failure to investigate the cause of a previous malfunction of its automatic door and to report the malfunction to door installer);
 
 Norris v. Wal-Mart Stores, Inc.,
 
 628 So.2d 475, 478 (Ala.1993) (holding that when a 10-pound box of toothpaste fell from upper shelf in store and struck customer’s head, a jury question was presented with respect to whether reasonable maintenance of the premises would have included notice of the lack of “ ‘fencing’ or ‘snap-railing’ on the uppermost level of the shelf’); and
 
 Mims v. Jack’s Rest.,
 
 565 So.2d 609, 611 (Ala. 1990) (stating that a loose threshold over
 
 *504
 
 which a restaurant patron tripped was a “fixture that requires ordinary and reasonable maintenance in order to provide safe premises for the store’s customers”).
 
 Compare Dolgencorp, Inc. v. Hall,
 
 890 So.2d 98 (AIa.2003) (reversing a judgment entered on a jury verdict for customer and holding that customer had failed to establish that store had actual or constructive knowledge of loose cap on bottle of liquid drain cleaner on top shelf in store when store employees had performed an inspection of its premises to check shelves for bottles with loose caps at 8:30 a.m., only three hours before customer was injured, and the contents of drain-cleaner bottle spilled on her).
 

 Angelo Azzarello’s deposition testimony indicates that he was not aware of any potential hazard in the design of the flooring material on Intergraph’s basketball court. He stated that he had never considered that “people’s shoes might get caught in the floor.” Azzarello also testified that the flooring had been in use on Intergraph’s basketball court for 14 years without complaint or injury. Finally, even Edwards conceded that there was nothing about the appearance of the floor or the way it was maintained that would have put one on notice that it presented a trip hazard. In deposition testimony, Edwards acknowledged that the holes in the design of the flooring material were “obvious,” but, he said, “any type of defect where I could have got injured wasn’t obvious.”
 

 Edwards’s deposition testimony makes it clear that he sought to impose liability upon Intergraph for a “design defect” in the flooring material of its basketball court. In fact, he sued the manufacturer of the flooring material, the party who was presumably responsible for the allegedly defective design. Nevertheless, citing
 
 Wal-Mart Stores, Inc. v. Rolin,
 
 supra, Edwards argues that, by installing the perforated flooring on its gymnasium floor, Intergraph “affirmatively created” the allegedly dangerous condition on its basketball court. However, neither
 
 Rolin
 
 nor the authorities upon which it relies, nor
 
 Denmark v. Mercantile Stores, Inc.,
 
 supra, supports the proposition that Intergraph “affirmatively created” the allegedly defective condition about which Edwards complains.
 

 In
 
 Rolin,
 
 the supreme court held that a customer who tripped over a barbecue grill that was protruding from a box was not required to establish the premises owner’s actual or constructive knowledge of the hazardous condition because “there [was] evidence to indicate that the hazardous condition was created by employees of the premises owner.” 813 So.2d at 865. The court cited
 
 Wal-Mart Stores, Inc. v. McClinton,
 
 supra, and Joseph A. Page,
 
 The Law of Premises Liability
 
 § 9.11 at 169 (2d ed.1988), in support of its holding. In
 
 McClinton,
 
 there was also evidence to indicate that the premises owner’s employees had created a hazardous condition — a gun cabinet that was protruding into the store aisle. Similarly, in
 
 Denmark,
 
 there was evidence indicating that the premises owner’s employees had left a large roll of plastic shopping bags in a place where customers were likely to trip on it. The Page treatise makes it clear that the “affirmative-creation” exception applies to the
 
 active
 
 negligence of a defendant or its employees that causes a dangerous condition to come into existence in what would otherwise be a safe environment. We cannot hold that Intergraph’s installation of a flooring material that had produced no complaints and that had caused no injuries for 14 years constitutes the kind of “affirmative creation” of a defective condition that is contemplated by
 
 Denmark, Rolin, McClinton,
 
 and the Page premises-liability treatise.
 

 
 *505
 
 Citing
 
 Mims v. Jack’s Restaurant,
 
 supra, Edwards also contends that because the allegedly defective flooring was a part of Intergraph’s premises, a jury question was presented with respect to whether Intergraph had actual or constructive notice of the defect. A close reading of
 
 Mims,
 
 however, reveals that it does not stand for such a broad proposition. In
 
 Mims,
 
 a restaurant customer was injured when she tripped and fell over a loose threshold at the entrance to the restaurant. The evidence indicated that “some screws were missing” from the threshold. 565 So.2d at 610. The trial court entered a summary judgment for the restaurant, and the customer appealed. The supreme court reversed, stating that
 

 “in cases where the alleged defect is a part of the premises (in this case, a loose threshold in the main entrance of a restaurant), once a plaintiff has made a prima facie showing that a defect in a part of the premises has caused an injury, then the question whether the defendant had actual or constructive notice of the defect will go to the jury, regardless of whether the plaintiff makes a prima facie showing that the defendant had or should have had notice of the defect at the time of the accident.”
 

 565 So.2d at 610. The supreme court narrowed the apparent broadness of the foregoing statement and positioned its decision squarely within the recognized exception for failure to maintain or inspect the premises, with the following language:
 

 “[A] defective threshold ... is a fixture that requires ordinary and reasonable maintenance in order to provide safe premises for the store’s customers.”
 

 565 So.2d at 611. Edwards did not contend that Intergraph had failed to properly inspect or maintain the flooring on its basketball court. Thus, neither of the previously discussed exceptions to the rule that an invitee must present substantial evidence that the premises owner knew or should have known of the dangerous or defective condition applies.
 

 Edwards cites
 
 Howard v. Andy’s Store for Men,
 
 supra, for the proposition that the testimony of his expert witness, Russell J. Kendzior, established that Inter-graph breached its duty to warn him of a tripping hazard in the design of the flooring of its basketball court, a hazard that, Kendzior testified, was not noticeable by the casual observer.
 

 In
 
 Howard,
 
 this court reversed a summary judgment in favor of a store owner because expert testimony revealed that a one- to two-inch change in elevation between the black asphalt parking lot and the white concrete sidewalk in front of the store was concealed because the vertical edge of the sidewalk had been splashed by black asphalt and would not be noticed by an invitee, even one who was using reasonable care in approaching the store.
 
 Howard
 
 is one of a line of cases dealing with whether elevation irregularities in sidewalks, curbs, or thresholds constitute “trip hazards.”
 
 See, e.g., Ex parte Harold L. Martin Distrib. Co.,
 
 supra (configuration of sidewalk, curb, and wheelchair ramp);
 
 Stephens v. City of Montgomery,
 
 575 So.2d 1095 (Ala.1991)(uneven sidewalk, with one portion an inch higher than the other portion);
 
 Mann v. Smith,
 
 561 So.2d 1112 (Ala. 1990) (top step leading to store not even with door jamb);
 
 Bogue v. R & M Grocery,
 
 553 So.2d 545 (Ala.1989)(sloping concrete entrance to a grocery store located near gasoline pumps);
 
 Waits v. Crown Dodge Chrysler Plymouth, Inc.,
 
 770 So.2d 618 (Ala.Civ.App.1999) (doorway threshold three inches higher than floor); and
 
 Woodward v. Health Care Auth. of Huntsville,
 
 727 So.2d 814 (Ala.Civ.App.1998) (unmarked wheelchair ramp).
 

 
 *506
 
 We hold that the elevation-irregularity cases are distinguishable on the basis that the expert testimony in those cases established that the defects on the premises— though not readily perceivable by the casual observer, even one using reasonable care — could have been discovered by the premises owner upon reasonable inspection.
 
 See, e.g., Howard,
 
 757 So.2d at 1210 (stating that the plaintiffs expert testified that “anyone who was looking for it would notice the change in elevation between the parking lot and the sidewalk”). Thus, the elevation-irregularity cases are a subset of the failure-to-inspect cases previously discussed.
 

 In the present case, Edwards presented no evidence indicating that Inter-graph, by inspecting the flooring on its basketball court, could have discovered the defect that allegedly caused his injury. “ ‘[T]he law doesn’t say that for every
 
 injury
 
 there is a remedy. It says for every
 
 wrong
 
 there is a remedy.” ’
 
 Shaw v. City of Lipscomb,
 
 380 So.2d at 814. Based on the record before us, we hold that Edwards failed to present substantial evidence indicating that his injury resulted from a defect or instrumentality on Inter-graph’s premises that was the result of Intergraph’s negligence and of which In-tergraph had or should have had notice.
 
 See Bacon v. Dixie Bronze Co.,
 
 475 So.2d 1177 (Ala.1985) (holding that when plaintiff-independent contractor presented no evidence indicating that defendant-owner of building knew or should have known of the existence of a defective weld in a channel beam, owner was not liable for injury to independent contractor’s employees who were injured when beam collapsed).
 

 The judgment of the Madison Circuit Court is affirmed.
 

 APPLICATION OVERRULED; OPINION OF NOVEMBER 16, 2007, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
 

 THOMPSON, P.J., and PITTMAN, J., concur.
 

 BRYAN and MOORE, JJ., concur in the result, without writings.
 

 [1]
 

 . The trial court entered a judgment awarding benefits under the Workers' Compensation Act. No issue with respect to that judgment is presented on appeal.
 

 [2]
 

 . Edwards later amended his complaint to substitute Sport Court International, Inc., the manufacturer of the flooring material, for one of the fictitiously named defendants.